**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**November 3, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

MAIKIJAH A. HAKEEM,

    Plaintiff - Appellant,

v.

KANSAS DEPARTMENT OF HUMAN
SERVICES, Child Support Enforcement
Division; JODI HOWARD, in her
individual and official capacities as
Commissioner of Kansas Department of
Human Services,

    Defendants - Appellees.

No. 22-3144
(D.C. No. 2:21-CV-02417-JAR-TJJ)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

Plaintiff Maikijah A. Hakeem, proceeding pro se, appeals the district court's

dismissal of his claims brought against Defendants for their alleged "unauthorized

interception" of his economic impact payments issued under the Coronavirus Aid,

Relief, and Economic Security Act of 2020 (the CARES Act) to satisfy his past-due

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

child support obligations. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the dismissal of Hakeem's claims without opportunity to amend.

I

In March 2020, Congress passed the CARES Act, which, in part, provided economic impact payments (EIPs) of up to $1,200 per adult for eligible individuals and $500 per qualifying child. *See* CARES Act, Pub. L. No. 116-136, § 2201, 134 Stat. 281, 335 (2020) (codified, in part, at 26 U.S.C. § 6428). Hakeem, who is civilly committed in Minnesota pursuant to a state court order, received approximately $1,813.36 in EIPs. ROA at 5–6, 8. According to Hakeem, while he was in the care of the State of Minnesota, Defendants, the Kansas Department for Children and Families ("DCF") and its Secretary, Laura Howard,[1] "[i]llegally seized Plaintiff[']s Economic Impact Payment . . . [and] [u]nlawfully applied [it] to his past-due child support obligations." *Id.* at 6.

On September 24, 2021, Hakeem filed his complaint in the United States District Court for the District of Kansas. *Id.* at 5–16. Therein, he raised two causes of action against Defendants: (1) "unauthorized interception of EIP in violation of the CARES Act," and (2) "breach of [security] in violation of the CARES Act." *Id.*

---

[1] In his complaint, Hakeem lists the "Kansas Department of Human Services, Child Support Enforcement Division" and "Jodi Howard," in her individual and official capacities as its "Commissioner," as the defendants. ROA at 5, 7. As the district court later noted, however, "there is no such agency or commissioner in Kansas." *Id.* at 38. In his response to the district court's order to show cause, Hakeem clarified that he meant to sue DCF and its Secretary, Laura Howard. *See id.* at 48, 56–57. Thus, as did the district court, we will proceed in reviewing Hakeem's appeal with DCF and Laura Howard as Defendants.

(capitalization removed). After the magistrate judge granted Hakeem's motion to proceed *in forma pauperis*, *id.* at 20–21, Hakeem attempted (but failed) to serve his named defendants. *Id.* at 22, 38. When the named defendants did not appear, the magistrate judge ordered Hakeem to move for default or otherwise show cause why his case should not be dismissed for failure to prosecute. *Id.* at 24–25. Hakeem responded with a motion for entry of default and affidavits of service. *Id.* at 28–34. Thereafter, however, the district court judge recognized that Hakeem's named defendants did not exist and that his complaint was subject to mandatory screening under 28 U.S.C. § 1915(e)(2). *Id.* at 36–40. Thus, the district court screened Hakeem's complaint and ordered Hakeem to show cause why his complaint should not be dismissed for failure to state claim. *Id.* Hakeem responded and, therein, clarified who he meant to name as defendants, discussed the legal merits of his claims, and requested leave to amend his complaint. *Id.* at 46–53.

Ultimately, the district court issued an order dismissing Hakeem's complaint for failure to state a claim. *Id.* at 56–67. Therein, the district court concluded that (1) the CARES Act did not prevent Defendants from intercepting Hakeem's EIPs to apply toward his past-due child support debts, and (2) the state was shielded from liability by sovereign immunity. *Id.* at 59–65. The district court also denied Hakeem leave to amend his complaint, as it concluded that any opportunity to amend "would be futile." *Id.* at 65. Hakeem now appeals the district court's dismissal of his complaint.

## II

We review de novo the district court's dismissal of an action under 28 U.S.C. § 1915(e)(2) for failure to state a claim, applying the same standards we employ to review dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In conducting our review, we accept all well pleaded facts as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in his favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). Because Hakeem appears pro se, we construe his filings liberally, but we do not serve as his advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## III

On appeal, Hakeem argues that the district court erred in dismissing his claims for failure to state a claim (in relation to both the substance of his CARES Act claim and sovereign immunity), not holding Defendants in default, and denying Hakeem an opportunity to amend his complaint. We conclude that the district court did not err in any of these respects.

### A.    EIP Garnishment

The district court correctly concluded that Hakeem failed to state a claim for relief under both the CARES Act and the Consolidated Appropriations Act (the

CAA), 2021, Pub. L. No. 116-260, 134 Stat. 1182 (2020) (codified, in part, at 26 U.S.C § 6428A).

### 1.  The CARES Act

As he did in the district court, Hakeem argues that, "[p]ursuant to the [CARES] Act[,] payments for child-support are among a list of exemptions, which cannot be intercepted and applied to certain financial obligations." Aplt. Br. at 2. Hakeem is correct that the CARES Act prohibits EIPs from being offset to satisfy *certain* debts, *see* CARES Act § 2201(d), but, as the district court explained, past-due child support is not one of them. *See Frequently Asked Questions on the Treasury Offset Program (TOP)*, Bureau Fiscal Serv., https://fiscal.treasury.gov/top/faqs-for-the-public-covid-19.html (last modified July 9, 2021) ("Your entire [EIP] authorized by the CARES Act can be offset, up to the amount of your child support debt."); *see also Ortiz-Rivas v. Mnuchin*, No. 20-cv-1844-pp, 2021 WL 1400931, at *2 (E.D. Wis. Apr. 14, 2021) ("Based on the plaintiff's allegations, it appears that his EIP was offset because he owed delinquent child support. The CARES Act authorizes such offsets."); *Smith v. Cameron*, No. 3:20-CV-P748-CHB, 2022 WL 109217, at *2 (W.D. Ky. Jan. 11, 2022) (same); *Oliver v. Ill. Dep't of Health & Fam. Servs.*, No. 21-cv-1114-SMY, 2021 WL 4895336, at *2 (S.D. Ill. Oct. 19, 2021) (same).[2] As the district court held, Defendants did not violate the CARES Act by intercepting Hakeem's EIPs to apply the funds toward his unpaid child support obligations.

---

[2] We cite these unpublished decisions from other jurisdictions not as controlling precedent but for their persuasive value.

### 2.  The CAA

Hakeem's complaint states nothing about the CAA. However, both before the district court and on appeal, Hakeem clarifies that a portion of his EIPs was paid pursuant to the CAA, which, according to Hakeem, protects such payments from garnishment. The district court did not err in concluding that Hakeem failed to state a claim for wrongful garnishment under the CAA.

The CAA provided a second round of EIPs ($600 per adult for eligible individuals, plus $600 per qualifying child) to qualifying individuals. 26 U.S.C. § 6428A(a). Subsection 272(d)(2)(A) of the CAA states that "no applicable payment shall be subject to, execution, levy, attachment, garnishment, or other legal process, or the operation of any bankruptcy or insolvency law." CAA § 272(d)(2)(A). To ensure that CAA EIPs are not garnished, any payment made via an "advance refund amount paid pursuant to [26 U.S.C. § 6428A(f)]" and deposited "electronically by direct deposit" must be issued by the Secretary of the Treasury "using a unique identifier that is reasonably sufficient to allow a financial institution to identify the payment as an applicable payment." *Id.* § 272(d)(2)(B)(i), (d)(2)(E)(iii)(I). If an applicable payment is deposited into an account that is subject to a garnishment order—but the applicable payment is not properly encoded with a unique identifier— the financial institution that maintains the garnished account must, "upon the request of the account holder, . . . treat the amount of the funds in the account at the time of the request, up to the amount of the applicable payment . . . as exempt from a garnishment order without requiring the consent of the party serving the garnishment

6

order or the judgment creditor." *Id.* § 272(d)(2)(C)(ii). The term "garnishment order" includes a "written instruction issued by a court . . . or a State child support enforcement agency, including a lien arising by operation of law for overdue child support." *Id.* § 272(d)(2)(E)(v).

In his response to the district court's order to show cause, Hakeem argued that his CAA EIP "arrived as a federal tax refund rather than as an encoded economic impact payment." ROA at 50. Thus, without the proper unique identifier, Defendants—who, Hakeem argued, acted as (1) the financial institution that maintained Hakeem's garnished account, (2) the creditor that received the proceeds of the garnishment, and (3) the state agency that issued the garnishment—improperly seized Hakeem's CAA EIP. *Id.* Although Hakeem's arguments before this court are less robust than those he made before the district court, he cites *Beal v. Davids*, No. 1:21-cv-522, 2021 WL 2934835, at *4 (W.D. Mich. July 13, 2021), *vacated, in part, by the district court*—which the district court examined, in depth—to support his position. *See* Aplt. Br. at 4 n.3; ROA at 61–62.

In *Beal*, the plaintiff, an inmate with the Michigan Department of Corrections (the MDOC), alleged that the MDOC improperly seized his $600 CAA EIP from his prisoner trust account to pay his "various debts" owed to the MDOC and the state and federal courts. 2021 WL 2934835, at *1–2. Although the CAA "does not define the term," the *Beal* court "presume[d] that the MDOC operates as a financial institution" because it "administers the trust accounts of the prisoners in its custody," "accepts the relevant payments from the federal government," and "appears capable both of

effectuating garnishment orders and of notating exempt payments." *Id.* at *5. The

court ultimately concluded that the plaintiff had stated a plausible claim for relief

against the warden and three other employees of his facility:

> [The CAA] arguably mandated Defendants to treat $600 of Plaintiff's funds as exempt from garnishment. Plaintiff's allegations do not clearly indicate whether the applicable payment was issued with an appropriate unique identifier as directed by Section 272(d)(2)(B). Nevertheless, Plaintiff's [letter to the MDOC] requested that . . . MDOC treat $600 of Plaintiff's $1,800 payment as exempt from garnishment, because it was a payment under the [CAA].

> . . . .

> Plaintiff's complaint and attachments suggest that Defendants seized on a technicality—that his payment arrived as a federal tax refund rather than as an encoded economic impact payment. Yet, the Defendants appeared to act in three capacities simultaneously: the financial institution obligated to treat Plaintiff's funds as exempt under [the CAA], a creditor to whom Plaintiff owed debts, and the State agency capable of directing a garnishment of Plaintiff's funds to pay the creditor. That conflict could plausibly give Defendants a reason to justify seizing Plaintiff's funds to pay his debts. However, [the CAA] provides a secondary method for protecting relevant payments from garnishment. Plaintiff appears to have employed that secondary method when he sent his [letter to the MDOC].

> In short, [the CAA] arguably mandated that Defendants— corrections officers at the financial institution holding Plaintiff's funds— treat $600 of Plaintiff's funds as exempt from garnishment. Plaintiff alleges that they did not . . . . Thus, Plaintiff has alleged facts sufficient to state a claim under [the CAA].

*Id.* at *5–6.

While *Beal* is similar to Hakeem's situation in some regards, Hakeem wholly

fails to explain how or why it would be proper to consider DCF a "financial

institution." As the district court in this case discussed, unlike the plaintiff in *Beal*,

Hakeem makes no allegations that DCF (1) "held his funds," or (2) "failed to honor

his request to treat his CAA economic impact payment as exempt from garnishment, like the MDOC appeared to in *Beal*." ROA at 62; *see* CAA § 272(d)(2)(C)(ii). In fact, it appears that because Hakeem is civilly committed, his funds are being held in a State of Minnesota trust account. *See* ROA at 17. The Kansas DCF cannot be held liable for receiving funds that were allegedly wrongfully released from his account by a third party financial institution, especially when Hakeem does not allege that he informed any of the relevant actors about this error prior to filing suit. *See Beal*, 2021 WL 2934835, at *5–6.[3] Accordingly, the district court did not err in concluding that Hakeem failed to state claim for violation of the CAA.

**B.　Sovereign Immunity**

As the district court correctly noted, Hakeem's claims are barred by sovereign immunity. "The Eleventh Amendment renders the States [and their agencies] immune from 'any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *Tennessee v. Lane*, 541 U.S. 509, 517 (2004) (quoting U.S. Const. amend. XI); *see Collins v. Daniels*, 916 F.3d 1302, 1315 (10th Cir. 2019). However, "[a] State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011) (internal citation omitted). "A waiver of sovereign immunity cannot be

---

[3] Of further note, the plaintiff in *Beal* argued that EIPs are "exempt from any type of seizure to pay debts *other than child support*." *Beal*, 2021 WL 2934835, at *2 (emphasis added). The *Beal* court, however, did not address the child support exception, which we conclude is applicable here.

implied but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotation marks and citation omitted). Similarly, "Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996) (internal quotation marks and citation omitted). Hakeem states that "Defendants are deemed to have waived any immunity," ROA at 13; Aplt. Br. at 4, but this statement is not supported by any facts or law.

First, Hakeem cites *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 692 (N.D. Cal. 2020), *appeal dismissed* (Dec. 11, 2020), to support his position that Defendants are not entitled to sovereign immunity. There, the plaintiffs sued several federal agencies (including the Internal Revenue Service (the IRS)) and their directors, to challenge the IRS's policy of withholding EIPs from incarcerated persons "solely because they are or were incarcerated." *Id.* at 692. Ultimately, the district court agreed with the plaintiffs and, before doing so, concluded that Congress had abrogated the IRS's—a *federal* agency's—sovereign immunity in the context of its authority under the federal Administrative Procedures Act (the APA). *Id.* at 678; *see also id.* at 681 ("Congress waived sovereign immunity under the APA and the court has subject matter jurisdiction to hear the case."). *Scholl*, as well as Hakeem's repeated references to the APA, are readily distinguishable from the present case. The APA permits suits against federal agencies but does not waive the sovereign immunity of a state agency such as DCF.

10

Second, Hakeem's citations to out-of-circuit cases that concern the availability of *qualified* immunity are unavailing, as they concern a different type of immunity than is at issue here. Aplt. Br. at 6 (citing *Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994) ("There is no dispute that qualified immunity does not apply to claims for equitable relief."); *Bradford v. Mo. Dep't of Corr.*, 46 F. App'x 857, 858 (8th Cir. 2002) ("We note that qualified immunity does not shield officials from equitable relief.")).

Third, Hakeem's suit is not saved by the "prospective-relief" exception of *Ex parte Young*. *See Ex parte Young*, 209 U.S. 123 (1908). "[U]nder [*Ex parte Young*], a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). "[A]lthough the doctrine will allow injunctive relief that might have a substantial ancillary effect on a state treasury, it does not allow an award for monetary relief that is the practical equivalent of money damages, even if this relief is characterized as equitable." *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1189 (10th Cir. 1998) *abrogated on other grounds by Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). To determine whether the *Ex parte Young* exception applies, the court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Muscogee (Creek) Nation*, 669 F.3d at 1167 (quotation marks and citation omitted).

11

Here, although Hakeem characterizes the relief he seeks as injunctive, equitable, and prospective, it is not. He seeks the return of funds that were previously taken from him. He alleges no ongoing constitutional violations that can be remedied by prospective, injunctive relief. Further, even if *Ex parte Young* were applicable, it would not save his suit against DCF, which is not an "individual state officer[]." *Id.* at 1166.

Fourth, although Hakeem seeks to bring claims against Howard, he offers no specific factual allegations asserting that she personally participated in the conduct giving rise to his injuries. Further, as noted, Hakeem's claims against Howard in her official capacity are barred by the doctrine of sovereign immunity because this immunity extends to "suits for damages and other forms of relief against state defendants acting in their official capacities." *Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012). Thus, the district court did not err in dismissing Hakeem's claims as barred by sovereign immunity.

## C.    Defendants' Default

Although there were some procedural missteps leading up to the district court's screening of Hakeem's suit, the district court was correct to not enter default judgment against Defendants. It appears that when Hakeem filed his suit, it was assigned to a magistrate judge. Although the magistrate judge granted Hakeem's motion to proceed *in forma pauperis*, ROA at 20–21, the case skipped mandatory screening pursuant to 28 U.S.C. § 1915(e)(2) and proceeded to service. Eventually, the magistrate judge ordered Hakeem "to either (1) move for entry of default and

12

after entry of default by the Clerk of Court, file a motion for default judgment as to Defendants Jodi Howard and Kansas Department of Human Services, Child Support Division . . . or (2) show good cause in writing . . . why this case should not be dismissed . . . for lack of prosecution." *Id.* at 24. After Hakeem responded to the show cause order, however, the district court judge noticed both that Hakeem's complaint was subject to mandatory screening and that the named defendants, the "Kansas Department of Human Services, Child Support Division" and its Commissioner, "Jodi Howard," did not exist. Accordingly, the district court ordered Hakeem to show cause why his complaint should not be dismissed. Hakeem submitted a response to the court's order, along with a motion to amend, and the case proceeded to proper screening. Thus, the district court did not err in declining to enter default judgment against Defendants—particularly in light of the fact that the record does not establish that they were ever served.

**D.    Leave to Amend the Complaint**

Finally, the district court did not err in denying Hakeem leave to amend his complaint. We review a district court's refusal to permit an amendment for abuse of discretion. *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007). Because Federal Rule of Civil Procedure 15(a) provides that courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a), denial of leave is generally justified only for "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment," *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th

13

Cir. 1993). Importantly, when the "denial is based on a determination that amendment would be futile, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility." *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1230 (10th Cir. 2017) (quotation marks and citation omitted).

The relief that Hakeem seeks—a federal court judgment ordering that Defendants repay him his EIP funds—is barred by sovereign immunity, which Hakeem cannot overcome. Further, Hakeem cannot maintain a suit for the wrongful garnishment of his EIPs pursuant to the CARES Act. This appeal is Hakeem's second opportunity to show cause why his suit should not be dismissed, and he has failed to allege any additional facts to overcome the barriers of immunity and the requirements of his substantive legal claims (e.g., allegations that the properly named defendant should be a non-governmental financial institution that wrongfully garnished his CAA EIP, even after Hakeem informed the financial institution about this error). Accordingly, the district court acted within its discretion to deny Hakeem opportunity to amend his complaint.

**IV**

For the foregoing reasons, we AFFIRM the district court's dismissal of Hakeem's complaint without opportunity to amend.

Entered for the Court

Mary Beck Briscoe
Circuit Judge